IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | |
|---|---|
| IN RE : | ) |
| | ) |
| HALLWOOD ENERGY, L.P., | ) CASE NO. 09-31253 |
| A DELAWARE LIMITED PARTNERSHIP, | ) JOINTLY ADMINISTERED |
| HALLWOOD ENERGY | ) |
| MANAGEMENT, LLC, A DELAWARE | ) CHAPTER 11 |
| LIMITED LIABILITY COMPANY, | ) |
| HALLWOOD GATHERING, L.P., | ) |
| A DELAWARE LIMITED PARTNERSHIP, | ) |
| HG II MANAGEMENT, LLC, | ) |
| A DELAWARE LIMITED LIABILITY COMPANY, | ) |
| HALLWOOD PETROLEUM, LLC, | ) |
| A DELAWARE LIMITED LIABILITY COMPANY, | ) |
| HALLWOOD SWD, LLC | ) |
| A DELAWARE LIMITED LIABILITY COMPANY, | ) |
| | ) |
| DEBTORS. | ) |

**FIRST AMENDED DISCLOSURE STATEMENT FOR FIRST
AMENDED JOINT PLAN OF REORGANIZATION FOR THE DEBTORS
PROPOSED BY HALL PHOENIX/INWOOD, LTD.**

(Dated: August 27 , 2009)

FRANK J. WRIGHT
PAUL B. GEILICH
C. ASHLEY ELLIS
**WRIGHT GINSBERG BRUSILOW P.C.**
600 SIGNATURE PLACE
14755 PRESTON ROAD
DALLAS, TX 75254

**ATTORNEYS FOR HALL PHOENIX/INWOOD, LTD.**

## TABLE OF CONTENTS

INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARTICLE I**
    HISTORICAL BACKGROUND AND PREPETITION BUSINESS OPERATIONS . . . 4

**ARTICLE II**
    PURPOSE OF CHAPTER 11 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

**ARTICLE III**
    ASSETS OF THE DEBTORS ON THE PETITION DATE . . . . . . . . . . . . . . . . . . . 6
    3.1    Hallwood Energy, L.P., a Delaware Limited Partnership . . . . . . . . . . . . 7
    3.2    Hallwood Energy Management, LLC, a Delaware Limited
           Liability Company . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
    3.3    Hallwood Gathering, L.P., a Delaware Limited Partnership . . . . . . . . . . 9
    3.4    HG II Management, LLC, a Delaware Limited Liability Company . . . . . 9
    3.5    Hallwood Petroleum, LLC, a Delaware Limited Liability Company . . . . 9
    3.6    Hallwood SWD, LLC, a Delaware Limited Liability Company . . . . . . . 10
    3.7    Claims and Causes of Action: All Debtors . . . . . . . . . . . . . . . . . . . . . . 10

**ARTICLE IV**
LIABILITIES OF THE DEBTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    4.1    Administrative Claims: All Debtors. . . . . . . . . . . . . . . . . . . . . . . . . . . . 15
    4.2    Scheduled and Known Secured and Priority Claims, Pending
           Litigation: All Debtors. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16
    4.3    Unsecured Claims: All Debtors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

**ARTICLE V**
    MATTERS ARISING DURING THE CHAPTER 11 CASES . . . . . . . . . . . . . . . . . 24
    5.1    Commencement of the Debtors' Cases. . . . . . . . . . . . . . . . . . . . . . . . . . 24
    5.2    Stay Litigation Commenced by HPI. . . . . . . . . . . . . . . . . . . . . . . . . . . 25
    5.3    Stay Litigation Commenced by FEI Shale. . . . . . . . . . . . . . . . . . . . . . . 25
    5.4    Global Mediation. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

**ARTICLE VI**
    THE PLAN OF REORGANIZATION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    A.    Summary of the Plan . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26
    B.    The Plan's Settlement Regarding HPI . . . . . . . . . . . . . . . . . . . . . . . . . 27
    C.    Committee and HPI Settlement . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28
    D.    Acceptance and Confirmation of the Plan . . . . . . . . . . . . . . . . . . . . . . 28
           1.    Requirements for Confirmation . . . . . . . . . . . . . . . . . . . . . . . . 28
           2.    The Plan Meets All of the Requirements for Confirmation . . . . . 30

**ARTICLE VII**

    LIQUIDATION ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

**ARTICLE VIII**

    VOTING PROCEDURES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

        A.    Classes Entitled to Vote on the Plan . . . . . . . . . . . . . . . . . . . . . . 32

        B.    Persons Entitled to Vote on the Plan . . . . . . . . . . . . . . . . . . . . . . . 32

        C.    Vote Required for Class Acceptance . . . . . . . . . . . . . . . . . . . . . . . 33

        D.    Voting Instructions . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

            1.    Ballots and Voting . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

            2.    Returning Ballots and Voting Deadline . . . . . . . . . . . . . . . . . . . 33

            3.    Incomplete or Irregular Ballots . . . . . . . . . . . . . . . . . . . . . . . 34

            4.    Changing Votes . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

        E.    Contested and Unliquidated Claims . . . . . . . . . . . . . . . . . . . . . . . . 34

        F.    Possible Reclassification of Creditors and Interest Holders . . . . . . . . . 34

**ARTICLE IX**

    CRAMDOWN OR MODIFICATION OF THE PLAN . . . . . . . . . . . . . . . . . . . . . . . 35

        A.    "Cramdown:" Request for Relief under Section 1129(b) . . . . . . . . . . . 35

        B.    The Plan Meets the "Best Interest of Creditors" Test . . . . . . . . . . . . . 36

        C.    The Plan is Feasible . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

        D.    The Plan Meets the Cramdown Standard With Respect to Any
            Impaired Class of Claims Rejecting the Plan . . . . . . . . . . . . . . . . . . 36

        E.    Modification or Revocation of the Plan; Severability . . . . . . . . . . . . . 37

**ARTICLE X**

    RISK FACTORS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        A.    Factors Relating to Chapter 11 and the Plan . . . . . . . . . . . . . . . . . . 37

        B.    Insufficient Acceptances . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

        C.    Lack of Material Recoveries on the Causes of Action . . . . . . . . . . . . . 38

**ARTICLE XI**

    CERTAIN FEDERAL INCOME TAX CONSEQUENCES OF THE PLAN . . . . . . . . 38

        11.1    Tax Consequences to the Debtors . . . . . . . . . . . . . . . . . . . . . . . 39

        11.2    Tax Consequences to Creditors . . . . . . . . . . . . . . . . . . . . . . . . . 39

**ARTICLE XII**

    RECOMMENDATION OF THE PLAN PROPONENT . . . . . . . . . . . . . . . . . . . . 42

# INTRODUCTION

This Disclosure Statement ("**Disclosure Statement**") and the accompanying Ballots are being furnished to you, the holders of Claims against and Interests in the Chapter 11 debtors Hallwood Energy, L.P., a Delaware limited partnership ("**Hallwood Energy**"); Hallwood Energy Management, LLC, a Delaware limited liability company ("**Hallwood Energy Management**"); Hallwood Gathering, L.P., a Delaware limited partnership ("**Hallwood Gathering**"), HG II Management, LLC, a Delaware limited liability company ("**HG II**"); Hallwood Petroleum, LLC, a Delaware limited liability company ("**Hallwood Petroleum**"); and Hallwood SWD, LLC, a Delaware limited liability company ("**Hallwood SWD**") (collectively "**Hallwood Energy**" or the "**Debtors**"), pursuant to Section 1125 of the United States Bankruptcy Code in connection with the solicitation of ballots for the acceptance of a Plan of Reorganization (the "**Plan**") Proposed by Hall Phoenix/Inwood, Ltd. ("**HPI**" or the "**Plan Proponent**") under Chapter 11 ("**Chapter 11**") of Title 11 of the United States Code (the "**Bankruptcy Code**").

Capitalized terms used in this Disclosure Statement and not defined herein shall have their respective meanings as defined in the Plan or, if not defined in the Plan, as defined in the Bankruptcy Code.

On March 1, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court, Northern District of Texas, Dallas Division (the "**Bankruptcy Court**"). On or about March 12, 2009, the Official Committee of Unsecured Creditors ("**Committee**") was appointed by the Office of the United States Trustee. HPI is the largest secured and unsecured creditor of the Debtors holding claims of at least $118,000,000 secured by substantially all of the Debtors' assets. On June 15, 2009, the Bankruptcy Court terminated the Debtor's exclusive right to file a plan in these Cases thereby allowing HPI to file the Plan. **THE COMMITTEE, ON BEHALF OF THE UNSECURED CREDITORS IN THESE CASES, SUPPORTS CONFIRMATION OF THE PLAN.**

The Debtors have filed their own plan of reorganization. The Debtors' plan requires a substantive consolidation of all of the assets and liabilities of the Debtors, a subordination of the secured claims of HPI, and a subordination of the claims of holders of convertible notes. Unlike the Plan proposed by HPI as Plan Proponent, the Debtors' plan depends virtually entirely on the success of three (3) separate and equally unlikely to occur events: (1) the Debtors' winning costly and protracted litigation to subordinate HPI's debt and the debt of all holders of convertible subordinated notes, to substantively consolidate the Debtors' Estates, and to recover over $6 million from FEI Shale, LP; (2) the Debtors raising $25 million in new capital investments; and (3) the Debtors drilling successful and profitable wells and achieving future business success, a task the Debtors' dismal historical business performance simply does not support. HPI proposes its Plan as an alternative to the uncertainties inherent in the Debtors' plan.

On August 24, 2009, after notice and hearing, the Bankruptcy Court approved this Disclosure Statement and authorized the Plan Proponent to solicit votes with respect to the Plan. The purpose of this Disclosure Statement is to enable those persons whose Claims against and Interests in the Debtors are Impaired and entitled to vote under the Plan to make an informed decision on whether

to vote for or against the Plan. Holders of Claims should read this Disclosure Statement and the Plan in their entirety before voting on the Plan. No solicitation of votes with respect to the Plan may be made except pursuant to this Disclosure Statement. No statement or information concerning the Debtors (particularly as to the results or financial condition of, or with respect to distributions to be made under the Plan) or any of the Debtors' assets, properties or business that is given for the purpose of soliciting acceptances or rejections of the Plan, is authorized other than as set forth in this Disclosure Statement. In the event of any inconsistencies between the provisions of the Plan and this Disclosure Statement, the provisions of the Plan shall control. A copy of the Plan is attached as **Exhibit "A"** to this Disclosure Statement.

After carefully reviewing this Disclosure Statement and all exhibits and schedules attached hereto, please indicate your acceptance or rejection of the Plan by voting in favor of or against the Plan on the enclosed Ballot.

**BALLOTS SHOULD BE MARKED, SIGNED, DATED AND RETURNED SO THAT THEY ARE STAMPED AS HAVING BEEN RECEIVED BY NO LATER THAN 4:00 P.M., CENTRAL STANDARD TIME, ON SEPTEMBER 30, 2009 (THE "VOTING DEADLINE") AT THE FOLLOWING ADDRESS, AS SET FORTH ON THE ENCLOSED RETURN ENVELOPE:**

**HALLWOOD BALLOTS**
**c/o WRIGHT GINSBERG BRUSILOW P.C.**
**600 SIGNATURE PLACE**
**14755 PRESTON ROAD**
**DALLAS, TEXAS 75254**

**THE PLAN PROPONENT BELIEVES THAT ACCEPTANCE OF THE PLAN IS IN THE BEST INTERESTS OF ALL CLAIMANTS OF THE DEBTORS AND, CONSEQUENTLY, THE PLAN PROPONENT URGES ALL CLAIMANTS TO VOTE TO ACCEPT THE PLAN.**

Any Ballots received after the Voting Deadline will not be counted (unless otherwise ordered by the Bankruptcy Court). Ballots that are received after the Voting Deadline may not be used in connection with the Plan Proponent's request for confirmation of the Plan or any modification thereof, except to the extent allowed by the Bankruptcy Court.

This Disclosure Statement has been compiled by the Plan Proponent to accompany the Plan. The factual statements, projections, financial information, and other information contained in this Disclosure Statement have been taken primarily from documents prepared by the Debtors, including the Debtors' Schedules and Statement of Financial Affairs, the Debtors' Monthly Operating Reports, pleadings filed in the Bankruptcy Case, and documents produced by the Debtors in discovery. As such, the Plan Proponent can not warrant that the information is accurate. Nothing contained in this Disclosure Statement shall have any preclusive effect against the Plan Proponent (whether by waiver, admission, estoppel or otherwise) in any cause or proceeding which may exist or occur in the future. This Disclosure Statement shall not be construed or deemed to constitute an acceptance of fact or

an admission by the Plan Proponent with regard to any of the statements made herein, and all rights and remedies of the Plan Proponent are expressly reserved in this regard. This Disclosure Statement contains statements which constitute the Plan Proponent's, the Debtors' or other third parties' views of certain facts. All such disclosures should be read as assertions of such parties. To the extent any paragraph does not contain an express reference that it constitutes an assertion of a particular party, it should be read as an assertion of the party indicated by the context and meaning of such paragraph.

The statements contained in this Disclosure Statement are made either as of the Petition Date or the date hereof unless another time is specified herein, and neither delivery of this Disclosure Statement nor any exercise of rights granted in connection with the Plan shall, under any circumstances, create an implication that there has been no change in the information set forth herein since the date of this Disclosure Statement.

Certain of the information contained in this Disclosure Statement, by its nature, is forward looking, contains estimates and assumptions which may prove to be inaccurate, and contains projections which may prove to be wrong, or which may be materially different from actual future results. Each Claimant should independently verify and consult its individual attorney and accountant as to the effect of the Plan on such individual Claimant or Interest holder.

The Plan Proponent strongly urges each recipient entitled to vote on the Plan to review carefully the contents of this Disclosure Statement, the Plan, and the other documents that accompany or are referenced in this Disclosure Statement in their entirety before making a decision to accept or reject the Plan.

**IT IS OF THE UTMOST IMPORTANCE TO THE PLAN PROPONENT THAT YOU VOTE PROMPTLY TO ACCEPT THE PLAN BY COMPLETING AND SIGNING THE BALLOT ENCLOSED HEREWITH AND RETURNING IT TO COUNSEL FOR HPI, AT THE ADDRESS SET FORTH IN THE BALLOT INSTRUCTIONS THAT ACCOMPANY THE BALLOT. SHOULD YOU HAVE ANY QUESTIONS REGARDING THE VOTING PROCEDURES, YOUR BALLOT, OR THE BALLOT INSTRUCTIONS, OR IF YOUR BALLOT IS DAMAGED OR LOST, CONTACT COUNSEL FOR HPI AT THE FOLLOWING ADDRESS:**

**C. ASHLEY ELLIS**
**WRIGHT GINSBERG BRUSILOW P.C.**
**600 SIGNATURE PLACE**
**14755 PRESTON ROAD**
**DALLAS, TEXAS 75254**
**(972) 788-1600**
**(972) 239-0138 (facsimile)**

The Approval Order fixes <u>**October 7, 2009 at 9:30 a.m.**</u>, Central Standard Time, in the Courtroom of the Honorable Stacey G.C. Jernigan, United States Bankruptcy Judge, United States Bankruptcy Court for the Northern District of Texas, Dallas Division, 1100 Commerce Street, Room

1428, Dallas, Texas 75242-1496, as the date, time, and place for the hearing on Confirmation of the Plan, and fixes September 30, 2009, as the date by which all objections to Confirmation of the Plan must be filed with the Bankruptcy Court and received by counsel for the Plan Proponent. Counsel for the Plan Proponent will request Confirmation of the Plan at the Confirmation Hearing.

Counsel for the Plan Proponent strongly urges each recipient entitled to vote on the Plan to review carefully the contents of this Disclosure Statement, the Plan, and the other documents that accompany or are referenced in this Disclosure Statement in their entirety before making a decision to accept or reject the Plan.

*THIS DISCLOSURE STATEMENT HAS NOT BEEN APPROVED OR DISAPPROVED BY THE SECURITIES AND EXCHANGE COMMISSION, NOR HAS THE SECURITIES AND EXCHANGE COMMISSION PASSED UPON THE ACCURACY OR ADEQUACY OF THE STATEMENTS CONTAINED HEREIN.*

## ARTICLE I

## HISTORICAL BACKGROUND AND PREPETITION BUSINESS OPERATIONS

The Debtors are in the oil and gas exploration and development business. They are headquartered in Dallas, Texas but have had drilling operations in Texas, Arkansas, Louisiana and Mississippi. Each of the Debtors were formed under the laws of the State of Delaware. Hallwood Energy, LP was formed on December 31, 2005 as the surviving entity in the consolidation of three privately held energy partnerships and owns the Debtors' mineral interests and drilling operations. Hallwood Energy, LP was promoted by the Debtors as a new venture intended to utilize the extraordinary unconventional gas drilling skills of the Defendants by exploring and exploiting new plays in West Texas, Louisiana and Arkansas. Hallwood Gathering, L.P. owns and operates the Debtors' pipeline gathering system in Arkansas. Hallwood Petroleum, LLC manages and operates the Debtors' properties. Hallwood SWD, LLC owns the Debtors' disposal wells. HG II Management, LLC's only purpose is to serve as the general partner of Hallwood Gathering, LP. Hallwood Energy Management, LLC's only purpose is to serve as the general partner of Hallwood Energy, LP.

In February 2006, Hallwood Energy entered into a $65 million loan facility with J. Aron and Company ("J. Aron"), an affiliate of the Goldman Sachs investment banking firm, and immediately drew down $40 million of this facility (the "J. Aron Facility"). As a result of multiple drilling failures during 2006, by year-end Hallwood Energy was out of compliance with several covenants in the J. Aron Facility and was unable to draw on the remaining $25 million under the J. Aron Facility. Hallwood Energy explored a restructure of the J. Aron Facility as well as other financing sources in early 2007. In April 2007, the Debtors' loan with Goldman Sachs was replaced by a $100 million loan commitment from HPI. Thus, HPI is the senior secured (and by far the largest) creditor of the Debtors and a party in interest in these cases. HPI has a properly perfected, first priority lien on all or substantially all of the property of the Debtors' estates.

It is always reasonable to ask how a company ends up in Chapter 11 and what factors precipitated the filing of a case. In the Debtor's own disclosure statement, they suggest that these bankruptcy cases were largely the result of two causes: first, the failure of the Debtors' intended AIM Exchange offering in the fall of 2008, and second, the decline in the price of natural gas. While these events no doubt had some relevance to the timing of the filing of these cases, in HPI's opinion they simply do not paint a complete and factually correct explanation. In HPI's opinion, the most important and basic reason for why these Debtors are in Chapter 11 is the failure of the management team at Hallwood Energy. Drilling operations in three separate areas including West Texas, Arkansas, and Louisiana all resulted in failures.

According to the Debtors, the fair market value of their assets with today's gas prices is between $28 and $38 million. This fact is shocking considering how much money has been invested in and loaned to the Debtors. The Debtors have spent over $575 million provided through loans, equity capital, the Farmout Agreement and related transactions and proceeds from asset sales. That $575 million includes $115 million loaned to the Debtors by HPI. So what happened to all the money? As a partial accounting, the Debtors spent and lost over $160 million of those funds acquiring land and mineral rights, $350 million drilling wells and $18 million on a pipeline system (probably worth less than $4 million today). The Debtors lost $80 million in their drilling operations in Louisiana and $280 million in their drilling operations in Arkansas Fayetteville Shale. The fact is over $550 million was turned into approximately $25 million by the Debtors. Approximately 95% of all the money the Debtors spent has been lost.

It is partially for these reasons that HPI simply does not believe that any plan the Debtors may propose to pay creditors from profits of successful drilling operations is feasible. They have already lost well over $500 million and their CFO has stated the number is closer to $600 million. As stated above, the Debtors' Plan also hinges on the subordination of HPI's claims. HPI does not believe those subordination allegations have any merit, and intends to vigorously defend against any effort to subordinate its claims. In ruling on HPI's stay motion, the Bankruptcy Court also cast doubt on the validity of the subordination claims. A copy of the stay order and findings of the Bankruptcy Court are attached as Exhibit "B." HPI's lack of confidence in the Debtors' business operations, coupled with the delay and costs of what HPI believe is meritless litigation against it, have lead HPI to believe that confirmation of HPI's Plan is in the best interests not only of HPI but of all creditors and parties in interest of the Debtors' estates.

## ARTICLE II

## PURPOSE OF CHAPTER 11

Chapter 11 is the principal business reorganization chapter of the Bankruptcy Code. The commencement of a Chapter 11 case creates an "estate" comprised of all the legal and equitable interests of a debtor. Sections 1101, 1107, and 1108 of the Bankruptcy Code provide that a debtor may remain in possession of its property and continue to operate its business as a "debtor-in-possession". Thus, since the Petition Date, the Debtors have been operating and managing their business operations in the ordinary course of business and under the supervision of the Bankruptcy Court.

Confirmation of a plan of reorganization is the principal purpose of a Chapter 11 case. The plan is the vehicle for satisfying the holders of claims against and equity interests in a debtor. Under the Bankruptcy Code, when soliciting acceptance or rejection of a plan of reorganization, a plan proponent must transmit to the holders of claims or interests a disclosure statement approved by the court as containing "adequate information." The Bankruptcy Court found that this Disclosure Statement contained information that is in compliance with the adequate information requirement of the Bankruptcy Code. The Disclosure Statement describes various transactions contemplated under the Plan and is supplied to you for purposes of assisting in your evaluation of, and your decision of how to vote on, the Plan. The Plan is attached hereto as Exhibit "A."

## ARTICLE III

## ASSETS OF THE DEBTORS ON THE PETITION DATE

In summary, the Debtors' assets generally consist of about $23 million in mineral interests pursuant to the Debtors' third party reserve report; $15 million in a pipeline gathering system (however fair market value is closer to $2.3 million); $8.7 million in pipe (however fair market value is half that amount); $500,000 in the HPI Operating Account; approximately $1 million in the Project Account; and $3 million in other assets. The Debtors have asserted that at fair market value they have between $28 and $38 million in assets all of which are subject to Liens of HPI and/or FEI Shale as well as certain M&M Liens. Thus, the Debtors have no equity in their assets above the secured debt.

However, since the Debtors are separate entities, the real picture in these cases is as follows: two of the Debtors (Hallwood Energy Management, LLC, HG II Management, LLC) have no assets at all other than their equity interests in one of the other Debtors, but owe HPI over $118 million. Another Debtor (Hallwood SWD, LLC) seemingly has no assets at all. Still another Debtor (Hallwood Gathering, LP) has listed assets of approximately $15 million (at book value), but again has secured debt to HPI of in excess of $118 million. Similarly, another Debtor (Hallwood Petroleum, LLC) has listed assets of approximately $2 million, but secured debt to HPI of in excess of $118 million and trade debt of $11 million. And, finally, Hallwood Energy, the "lead" Debtor as it were, has listed assets allegedly of approximately $40 million, against which it has secured debt to HPI of in excess of $118 million, and subordinated convertible debt of $49 million. _**It is HPI's opinion that the Debtors, individually and collectively, are hopelessly insolvent**_. The Bankruptcy Court likewise found in lifting the stay as to HPI that the Debtors have no equity in their assets. (See Exhibit "B.")

The following is a summary description of each of the Debtors' principal assets as they existed on the Petition Date. The information has been compiled from the Debtors' records and the Debtors' Schedules, Statements of Financial Affairs and Monthly Operating Reports and has not been independently verified by the Plan Proponent. _**HPI has a valid and existing Lien on all assets of all of the Debtors, save and except for the Project Account.**_

**3.1**   Hallwood Energy, L.P., a Delaware Limited Partnership

**Real Property**. The Schedules filed by Hallwood Energy list real property consisting of oil and gas leases located in Texas, Arkansas and Louisiana valued as of December 31, 2008 at $23,232,109.40. The Debtors obtained a reserve report from LaRoche Petroleum Consultants, Ltd. dated May 1, 2009. According to the reserve report, the Debtors' net reserves discounted at 10% as of April 1, 2009 were $21,783,197 consisting of $20,746,623 in Proved Developed Producing, $300,995 in Non-Producing, and $735,579 in Proved Undeveloped. HPI's consultant, Marvin M. Chronister, has reviewed the reserve report and determined that the oil and gas properties have an approximate range of value of between $13,621,244 and $15,182,166. He values the Produced Developed Producing reserves at $13,500,000 to $15,000,000; the Proved Developed Non-Producing reserves at $121,244 to $182,166; and the Proved Undeveloped reserves at no value. All of the property interests are subject to the Liens of HPI.

**Checking, Savings or Other Financial Accounts, Certificates of Deposit, or Shares in Banks, Savings and Loan, Thrift, Building and Loan, and Homestead Associations, or Credit Unions, Brokerage Houses or Cooperatives**: The Debtors' Schedules for Hallwood Energy, L.P. listed a bank account established pursuant to the prepetition loan documents with HPI located at Wells Fargo, N.A., Dallas, TX in the amount of $2,996,230.95; an escrow account at Wells Fargo, N.A., Dallas, TX in the amount of $49,108.73; and the FEI Shale Project Account located at Wells Fargo, N.A., Dallas, TX in the amount of $6,703,803.23. Since the Petition Date, the Debtors have been permitted to use certain of the cash to fund general and administrative expenses and lease operating expenses. In addition, the Bankruptcy Court has entered orders on the stay motions of HPI and FEI Shale resulting in the transfer to them of the bulk of the cash. Pursuant to an order of the Bankruptcy Court, the balance of the Project Account (less certain reserved amounts of $770,953.66 for G&E expense and professional fees and $250,000 for health, safety and environmental costs) has now been transferred to FEI Shale for payment of approved Investment Invoices (as defined in the Farmout Agreement), which primarily consist of Priority M&M Lien Claims and Junior M&M Lien Claims. A copy of the order on the stay motion of FEI Shale is attached as Exhibit "C." Pursuant to the Bankruptcy Court's order on HPI's stay motion, all monies in the HPI Operating Account in excess of $500,000 have been transferred to HPI. (See Exhibit "B.") The remaining $500,000 has been designated for the payment of up to $50,000 in professional fees of the Committee for each of the months of June, July and August 2009; reservation of $100,000 to secure the Liens, if any, of Wells Fargo and the balance for payment of other expenses as mutually agreed to by the Committee and HPI with any unused amount to be paid to HPI.

**Interest in Insurance Policies**: The Schedules filed by Hallwood Energy list an insurance policy with Chubb/Federal Insurance Company for business property and comprehensive general liability covering the period of 5/1/08 - 5/1/09; an insurance policy with Chubb/Federal Insurance Company for comprehensive automobile liability covering the period of 5/1/08 - 5/1/09; an insurance policy with Pacific Insurance Company/Chubb for pollution covering the period of 5/1/08 - 5/1/09; an insurance policy with federal Insurance Company/Chubb for umbrella liability covering the period 5/1/08 - 5/1/09; an insurance policy with Arch Insurance Company for excess umbrella liability covering the period 5/1/08 - 5/1/09; and an insurance policy with AIG for D&O

coverage including employment practices and securities claims for the period July 31, 2008 to July 31, 2009 with an aggregate limit of liability of $10 million.

**Interests in IRA, ERISA, Keogh, or other pension or profit sharing plans.** The Schedules filed by Hallwood Energy list the following plans: 1st Odyssey Group 401(k) Profit Sharing Plan, EIN #75-2569853, Plan Identification Number 333, administered by 1st Odyssey Group, 204 North Ector, Euless, TX 76039; and a balance held in escrow with First Odyssey for "funding of Retention Bonus" in the amount of $107,958.25.

**Stock and Interests in Incorporated and Unincorporated Businesses.** The Schedules filed by Hallwood Energy list Hallwood Energy as the 100% owner and sole member of Hallwood SWD, LLC; and the 100% owner and sole member of Hallwood Petroleum, LLC.

**Interests in Partnerships or Joint Ventures**: The Schedules filed by Hallwood Energy list Hallwood Energy as a limited partner of Hallwood Gathering, LP holding 99.99% of the outstanding limited partnership interests.

**Accounts Receivable**: The Schedules filed by Hallwood Energy list accounts receivable in the amount of $1,162,340.06.

**Other Liquidated Debts**: The Schedules filed by Hallwood Energy list a claim against Arkansas Energy Group LLC for overpayment in connection with the purchase of Arkansas oil and gas leases in 2005 and 2006; and claims against The Hallwood Group, Inc. for breach of the Equity Support Agreement dated June 9, 2008. The Debtors have filed a motion to approve a compromise and settlement agreement with Arkansas Energy Group, LLC, FEI Shale and Ark-Tex Energy Group, LLC. The Bankruptcy Court approved the settlement by order entered on July 1, 2009.

**Licenses, Franchises, and Other General Intangibles**: The Schedules filed by Hallwood Energy list a license of OGSYS Software from Oil & Gas Information Systems, Inc. dated September 13, 2002.

**Inventory**: The Schedules filed by Hallwood Energy list tubular inventory including pipe, casing, etc. valued at $8,770,443.87. The fair market value of the inventory is approximately 50% of the book value.

### 3.2    Hallwood Energy Management, LLC, a Delaware Limited Liability Company

**Stock and Interests in Incorporated and Unincorporated Businesses.** The Schedules filed by Hallwood Energy Management indicate that Hallwood Energy Management owns 100% of the membership interests of HG II Management, LLC.

**Interest in Partnerships or Joint Ventures**: The Schedules filed by Hallwood Energy Management indicate that Hallwood Energy Management is a General Partner of Hallwood Energy owning .01% of outstanding partnership interests.

### 3.3     Hallwood Gathering, L.P., a Delaware Limited Partnership

**Real Property**: The Schedules filed by Hallwood Gathering indicate that Hallwood Gathering owns real property located in White Country, Arkansas for a compressor site which Hallwood Gathering values at approximately $44,000.00. Hallwood Gathering further asserts an equitable interest in easements and other rights of way related to a pipeline, the value of which Hallwood Gathering states is unknown.

**Pipeline and Related Gathering Facilities**: The Schedules filed by Hallwood Gathering indicate that Hallwood Gathering owns pipeline and gathering facilities valued at approximately $15,250,994.00. RW Beck, a consultant engaged by HPI, valued the pipeline system as of June 20, 2009 at $2.3 million.

### 3.4     HG II Management, LLC, a Delaware Limited Liability Company

**Interests in Partnerships or Joint Ventures**: The Schedules filed by HG II indicate that HG II is the General Partner of Hallwood Gathering, L.P. holding 0.01% of outstanding partnership interests.

### 3.5     Hallwood Petroleum, LLC, a Delaware Limited Liability Company

**Checking, Savings or Other Financial Accounts, Certificates of Deposit, or Shares in Banks, Savings and Loan, Thrift, Building and Loan, and Homestead Associations, or Credit Unions, Brokerage Houses or Cooperatives**: The Schedules filed by Hallwood Petroleum list a Certificate of Deposit In Time Account located at Wells Fargo, N.A. in Dallas, TX, securing Letter of Credit NTS832348 for the benefit of the Arkansas Oil and Gas Commission for plug and abandon costs in the amount of $50,000.00; a Certificate of Deposit In Time Account located at Wells Fargo, N.A. in Dallas, TX securing Letter of Credit NzS629973 for the benefit of Texas Railroad Commission for plug and abandon costs in the amount of $25,000.00; a bank account established pursuant to the prepetition loan documents with HPI located at Wells Fargo, N.A., Dallas, TX in the amount of $417,334.93; and a Petty Cash Account located at J.P. Morgan Chase, Dallas, TX in the amount of $1,712.51. Pursuant to the Bankruptcy Court's order on HPI's stay motion, all monies in the HPI Operating Account in excess of $500,000 have been transferred to HPI. (See Exhibit "B.") The remaining $500,000 has been designated for the payment of up to $50,000 in professional fees of the Committee for each of the months of June, July and August 2009; reservation of $100,000 to secure the Liens, if any, of Wells Fargo and the balance for payment of other expenses as mutually agreed to by the Committee and HPI with any unused amount to be paid to HPI.

**Security Deposits with Public Utilities, Telephone Companies, Landlords, and Others**: The Schedules filed by Hallwood Petroleum indicate that Hallwood Petroleum placed a prepetition security deposit with Odyssey One Source, Inc. in connection with an October 15, 2004, contract for employee services, including payroll, in the amount of $86,000.00; a security deposit with GE Capital for Minolta copiers in the amount of $2,894.00; and a security deposit with Consolidated Information Systems, Inc., as landlord of the Searcy office, in the amount of $500.00.

**Interests in Insurance Policies**: The Schedules filed by Hallwood Petroleum list an insurance policy with Dallas National Insurance Company for Worker's Compensation and Employers Liability as co-employer for employees leased from Odyssey covering the period 8/10/08 - 8/10/09, the value of which is presently unknown; and a seismic bond for the State of Arkansas posted by RLI Surety, a division of RLI Insurance Company, the value of which is $50,000.00.

**Accounts Receivable**: The Schedules filed by Hallwood Petroleum list joint interest billing accounts receivable with a stated value of $350,413.48.

**Other Liquidated Debts Owed to Debtor Including Tax Refunds**: The Schedules filed by Hallwood Petroleum list a sales, use and severance tax refund due from the State of Arkansas, the value of which is presently unknown.

**Licenses, Franchises, and Other General Intangibles:** The Schedules filed by Hallwood Petroleum list drilling permits for Harrison State 56-10 #1, 56-36 #1 and 57-31 #1 in Reeves Co., TX the value of which are presently unknown; and licenses from Landmark Graphics Corporation for use of Aries System and Geographics software, the value of which is presently unknown.

**Automobiles, Trucks, Trailers and Other Vehicles and Accessories**: The Schedules filed by Hallwood Petroleum list the following automobiles: 2006 Chevrolet 1500 Slvr. 15 Ext. 4x4 StdB 4.8L 8 cyl., location, 403 S. Poplar, Suite F, Searcy, Arkansas 72143 with a fair market value of approximately $29,732.44; 2007 Honda TRX500 FM FourTrax Foreman ATV 475cc, location, 403 S. Poplar, Suite F, Searcy, Arkansas 72143 with a fair market value of approximately $7,924.24; 2007 Utility Trailer Flatbed, Light Duty 6' Standard Hitch, 403 S. Poplar, Suite F, Searcy, Arkansas 72143, the value of which is presently unknown; 2007 Cargo Trailer 12' x 6'8" w/2 3500# Axle, location, 403 S. Poplar, Suite F, Searcy, Arkansas 72143, with a fair market value of approximately $4,937.06; 2007 Chevrolet 1500 Slvr 4WD Ext Cab Lt1, location, 403 S. Poplar, Suite F, Searcy, Arkansas 72143 with a fair market value of approximately $26,780.65; 2005 Cargo Trailer 12', VIN # 5HABV121X6N057294, the value of which is presently unknown; and 2006 Trailer Cargo 12', VIN# 4RACS12106C006228 with a fair market value of $3,217.90.

**Office Equipment, Furnishings, and Supplies**: The Schedules filed by Hallwood Petroleum list office furniture, computers, computer software and office improvements valued at $972,896.74.

### 3.6    Hallwood SWD, LLC, a Delaware Limited Liability Company

The Schedules filed by Hallwood SWD, LLC do not list any assets.

### 3.7    Claims and Causes of Action: All Debtors: The Debtors collectively own the following claims and Causes of Action:

(a)    **Preferential Transfers/Fraudulent Transfers**. Within 90 days of the Petition Date in the case of non-insiders and one year in the case of insiders, several of the Debtors made a number of payments to creditors. Each of these payments is potentially an avoidable preference or fraudulent transfer. A list of the payments made by each Debtor

within the 90 day period and one year period respectively preceding that specific Debtor's Petition Date is contained in the Statement of Financial Affairs filed by each Debtor in response to question 3.A therein and attached hereto as Exhibit "D." In addition, each of the Debtors may have made other payments or transfers before the Petition Date that may be avoidable. Section 546 of the Bankruptcy Code provides a time frame of two years from the entry of Order for Relief (the Order for Relief is the same as the Petition Date for each Debtor) within which to bring an action to set aside an avoidable preference or fraudulent transfer. Under the Plan, these Avoidance Actions are transferred to the Trusts for investigation and pursuit. The Plan Proponent has not attempted to estimate the potential recoveries on such Avoidance Actions. All Preference Actions will be transferred to Trust II. All other Avoidance Actions will be transferred to Trust I.

(b)    **Claims Against Hallwood Group.**    The Hallwood Group Incorporated ("Hallwood Group") is a public company controlled by Anthony Gumbiner. Hallwood Group is the largest limited partner of the Debtors. Mr. Gumbiner was the chairman of both Hallwood Group and the Debtors until the bankruptcy filing when he resigned as a director of the Debtors. William Guzzetti was the President of both Hallwood Energy and Hallwood Group. The Debtors have sued Hallwood Group for $3.2 million for breach of a prepetition contract called an Equity Support Agreement. Under that agreement, Hallwood Group was to contribute up to $12 million to the Debtors to, in part, fund the interest payments on HPI's loans to the Debtors. The Equity Support Agreement was also a requirement of FEI Shale's funding to the Debtors under a Farmout Agreement (discussed elsewhere herein). Hallwood Group not only breached the Equity Support Agreement by failing to fund $3.2 million that was due to be paid to the Debtors, but further breached that agreement by declaring a dividend of $12 million to Hallwood Group's shareholders in direct violation of the terms of the Equity Support Agreement.

HPI filed a motion to intervene in the lawsuit against Hallwood Group as, at least HPI believes, it is unconscionable that the Debtors (whose President on the Petition Date was Guzzetti) should be permitted to be in charge of a lawsuit against Hallwood Group (whose President is also Guzzetti). On June 12, 2009, the Court granted HPI's motion to intervene, making HPI a party to the lawsuit. Immediately thereafter, HPI filed additional claims on behalf of the estates against Hallwood Group seeking actual damages of over $20 million resulting from Hallwood Group's actions including tortious interference with the FEI Shale Farmout Agreement, and seeking exemplary damages in excess of $100 million for Hallwood Group's willful, wanton and malicious interference with the Farmout Agreement and HPI's loan agreement with the Debtors. HPI intends to amend its complaint to assert additional claims against Hallwood Group.

Additionally, it is HPI's position that Hallwood Group engineered the Debtors' bankruptcy cases for its own personal benefit. The Debtors' bankruptcy filings drove down the value of the stock of Hallwood Group (again, Hallwood Group is the largest investor in the Debtors) and created an opportunity for Hallwood Group's largest shareholder, Mr. Gumbiner, to attempt to take Hallwood Group private at a substantially lower stock price (the stock actually dropped from over $40 to around $12 in a matter of months). Mr. Gumbiner

has in fact made a tender offer to take Hallwood Group private. In HPI's opinion, it is a logical deduction that Mr. Gumbiner controlled and likely had everything to do with planning of these bankruptcy cases.

Hallwood Group disputes these claims and has objected to this Disclosure Statement on the basis that this Disclosure Statement does not discuss the factual underpinnings for each potential cause of action against Hallwood Group or the potential costs or recoveries from such litigation. HPI has not attempted to estimate the potential costs of bringing, or the potential recoveries on, such causes of action. HPI would respond that it is simply not possible to estimate litigation costs or recoveries with any certainty. Second of all, HPI would respond that, for purposes of § 1125 of the Code and adequacy of disclosures, HPI is not required to set forth a detailed analysis of the potential claims against Hallwood Group, a legal analysis of the strengths and weaknesses of those claims, or an itemized litany of the evidence supporting those claims. At this juncture, adequate disclosure requires notice. Notice of the existence of the claims against Hallwood Group, notice of the nature of those claims, notice of the facts supporting those claims (albeit in a summary fashion at this pre-discovery phase) and notice of the intent to bring those claims. Hallwood Group is clearly on notice that it is likely to be sued if the Plan is confirmed and will assuredly tailor its vote accordingly. Finally, Hallwood Group insists that without a dollar figure of anticipated recoveries, creditors cannot vote on the Plan due to lack of adequate information. Hallwood Group's argument misses a fundamental point. Under the Plan, litigation will almost certainly be commenced against Hallwood Group and unsecured creditors will share in the recoveries therefrom. There are no other assets from which unsecured creditors have a chance to be paid. In virtually any other scenario including a Chapter 7 liquidation, there will likely be no funding for litigation and, it logically follows, no recoveries. Without HPI agreeing to fund the Causes of Action, there will be no possibility of any payment to unsecured creditors at all.

(c)   **Claims Against the Debtors' Management, Officers and Directors**. The Plan Proponent believes that causes of action may exist against the directors, officers, managers, employees and partners of the Debtors or anyone acting in concert therewith, including, but not limited to, claims for breach of fiduciary duty against former officers, directors, managers and general partners of the Debtors, including, but not limited to, Anthony Gumbiner, Bill Guzzetti, Russ Meduna, William Marble, Tony Strehlow and the general partner entities of the Debtors. Under the Plan, these causes of action are transferred to Trust I for investigation and pursuit. The Debtors have insurance for D&O Claims in the amount of $10 million. On July 28, 2009, a Notice of Claim was sent to the Debtors' insurance carrier putting them on notice of the existence of potential claims against the Debtors' former officers and directors including claims for mismanagement, neglect, omission, breach of fiduciary duty, errors, misstatements, and negligence arising out of the operations of the Debtors' properties, the raising of monies from investors, the acquisition of properties, the drilling of wells, the failure to reduce costs, the conflicts between the Debtors and Hallwood Group, and the loss of approximately $600 million. A true and correct copy of that Notice of Claim is attached hereto as Exhibit "E." On July 30, 2009, a lawsuit was filed in the 298th District Court in Dallas County, Texas against many of the

above named former officers and directors. A true and correct copy of the Original Petition initiating that litigation is attached hereto as Exhibit "F."

Hallwood Group has objected to this Disclosure Statement on the basis that HPI has not attempted to estimate the potential recoveries on such causes of action. HPI would respond that, first of all, while it is simply not possible to estimate recoveries with any certainty, HPI believes such recoveries will be substantial. Second of all, HPI would respond that, as discussed at length elsewhere in this Disclosure Statement, without a recovery on this and other Causes of Action contemplated to be filed under the Plan, there will be no possibility of any recovery in any amount for unsecured creditors. Thus, Hallwood Group's focus and insistence on HPI putting a dollar figure on anticipated recoveries is a red herring; the real focus ought to be on the fact that without HPI agreeing to fund the Causes of Action, there will be no possibility of any payment to unsecured creditors at all.

The Plan previously contained a provision at 6.06 that provided that the governing documents of each Debtor would be amended by the Trustee of Trust I to eliminate all provisions limiting the liability of the Debtors' officers, directors, employees, managers and partners including any exculpatory and indemnity provisions, with such amendments being effective as of the date of organization of each respective Debtor. Mr. Meduna, a former officer and director of various of the Debtor entities, objected to this Disclosure Statement on the basis that this provision is contrary to Delaware law and thus, the Plan cannot be confirmed. The Hallwood Group also objected to this provision of the Plan. The Court sustained, in part, the objections to section 6.06 and held that any amendments to the Debtors' governing documents shall be prospective only, and shall not have any retroactive effect. The Plan has now been amended.

    **(d)**    **J. Aron Claims**. The Debtors may have claims and Causes of Action against J. Aron and Company, a Goldman Sachs affiliate, with respect to the loans it made to the Debtors prior to the Petition Date and the payoff of such loans. J. Aron and Company received payment of approximately $10 million in pre-payment penalty in connection with the payoff of its loan which may be avoidable. All of these claims and Causes of Actions are transferred under the Plan to Trust III. The Plan Proponent has not attempted to value such claims.

    **(e)**    **Claims Against Suppliers**. The Debtors are currently involved in litigation with certain suppliers for defective pipe that was sold to the Debtors. Those suits involve Premier Pipe and Oil Country Tubular. The Debtors may also have additional claims against other suppliers of goods and services to the Debtors.

    **(f)**    **Claims Against Professionals**. The Debtors were represented by Hunton & Williams, Deloitte & Touche and other professionals prior to the Petition Date. Since the Petition Date, the Debtors have been represented by Rochelle McCullough LLP and Blackhill Partners among others. Both Hunton & Williams and Deloitte & Touche also represented Hallwood Group. The Debtors may have claims against such firms for malpractice, conflicts

of interest, breach of duty and other errors, omissions or acts resulting from their representation.

(g)     **Other Causes of Action.**  One or more of the Debtors may have other causes of action, including any and all claims, rights and causes of action that have been or could have been brought by or on behalf of any of the Debtors arising before, on or after the Petition Date, known or unknown, in contract or in tort, at law or in equity or under any theory of law, including, but not limited to any and all claims, rights and causes of action any of the Debtors or the Estates may have against any Person arising under chapter 5 of the Bankruptcy Code, or any similar provision of state law or any other law, rule, regulation, decree, order, statute or otherwise including avoidance actions as stated above, any and all claims, causes of action, counterclaims, demands, controversies, against third parties on account of costs, debts, sums of money, accounts, reckonings, bonds, bills, damages, obligations, liabilities, objections, and executions of any nature, type, or description which any of the Debtors have or may come to have, including, but not limited to, negligence, gross negligence, usury, fraud, deceit, misrepresentation, conspiracy, unconscionability, duress, economic duress, defamation, control, interference with contractual and business relationships, conflicts of interest, misuse of insider information, concealment, disclosure, secrecy, misuse of collateral, wrongful release of collateral, failure to inspect, environmental due diligence, negligent loan processing and administration, wrongful setoff, violations of statutes and regulations of governmental entities, instrumentalities and agencies (both civil and criminal), racketeering activities, securities and antitrust laws violations, tying arrangements, deceptive trade practices, breach or abuse of fiduciary duty, breach of any alleged special relationship, course of conduct or dealing, obligation of fair dealing, obligation of good faith, whether or not in connection with or related to this Plan, at law or in equity, in contract in tort, or otherwise, known or unknown, suspected or unsuspected.

(h)     **Subordination Claims Against HPI.**  On May 7, 2009, the Debtors filed an adversary proceeding against HPI, Craig Hall and Don Braun.  The Debtors assert claims for (a) equitable subordination, (b) recharacterization, © breach of fiduciary duty, (d) declaratory relief, and (e) objections to HPI's claims.  HPI disputes each of the Debtors' allegations asserted in this adversary proceeding.  A more detailed discussion of the alleged claims against HPI, and why HPI believes them to be without merit, is set forth elsewhere in this Disclosure Statement.  Under the Plan, any and all causes of action against HPI, Mr. Hall and Mr. Braun are settled, released and will be dismissed with prejudice.  In ruling on the stay motion of HPI, the Bankruptcy Court found that the claims lacked merit. (See Exhibit "B.")

(i)     **HPI's Direct Claims.**  Further, it is HPI's position that HPI was defrauded by Hallwood Group in connection with the loan underlying HPI's Senior Secured Claim against the Debtors.  Hallwood Group fraudulently lured HPI into making a loan to the Debtors, thanked HPI for making that loan, and then engineered the filing of the Debtors' bankruptcy cases to subordinate HPI's debt.  If HPI's debt is subordinated, Hallwood Group can make a recovery on its $90 million equity investment in the Debtors.  If HPI's claims are not subordinated, Hallwood Group has no hope of any recovery on its investment - Hallwood Group loses $90 million.  Under the Plan, HPI's Direct Claims against Hallwood Group for

the damage Hallwood Group has caused HPI will be transferred to Trust I for investigation and pursuit. HPI has not attempted to estimate the potential recoveries on such causes of action, but believes that such recoveries could be in the millions of dollars.

## ARTICLE IV

## LIABILITIES OF THE DEBTORS

**4.1**    **Administrative Claims: All Debtors.** Administrative Claims are any claims defined in §503(b) of the Code as "administrative expenses" and granted priority under § 507(a)(1) of the Code, including:

> **(1)**    a Claim for any cost or expense of administration in connection with the Case, including, without limitation, any actual, necessary cost or expense of preserving the Debtor's estate and of operating the business of the Debtor incurred on or before the Effective Date;

> **(2)**    the full amount of all Claims for compensation for legal, accounting and other services or reimbursement of costs under §§330, 331 or 503 of the Bankruptcy Code;

> **(3)**    all fees and charges assessed against the Debtor's estate under Chapter 123 of Title 28 of the United States Code; and

> **(4)**    a Claim for post-petition taxes and related items, including any interest and penalties on such post-petition taxes.

**(a)**    **Debtors' Professionals**. The Debtors employed the law firm of Rochelle McCullough, LLP as their bankruptcy counsel, Blackhill Partners as financial and restructuring advisor, James R. Latimer, III as Chief Restructuring Officer, and State Tax Analysis, Research & Recovery, LLC to pursue certain potential state tax refunds. The Plan Proponent does not have the ability to estimate the total fees of the Debtors' employed professionals. Rochelle McCullough has filed interim fee statements totaling $244,926.69 for the months of March and April 2009 but nothing for the months of May and June. The Plan Proponent expects that Rochelle McCullough will seek payment of a similar amount for May and June. With regard to the fees of Blackhill Partners, the Court capped Blackhill's fees at $100,000 per month for four (4) months and held that Blackhill may request a success fee based on the work performed for the Debtors, but that payment of a success fee is not guaranteed. Blackhill Partners and James Latimer have filed interim fee statements for the months of March and April seeking payment of $200,000. All parties in interest will have an opportunity to review and, if they wish, object to such fees, and final allowance of all fees to Debtors' professionals is subject to Court approval. As for State Tax Analysis, Research & Recovery, LLC, that company is to be paid strictly on a contingency fee basis; if no tax refunds are recovered, the company will not earn a fee.

(b)    **Committee's Professionals.** The Committee has employed the law firm of Okin Adams & Kilmer, LLP as bankruptcy counsel. To date, Okin Adams has filed interim fee statements for March and April of $108,852.13; for May of $71,096.08; and for June of $76,674.26. Some members of the Committee may also seek reimbursement of their individual expenses related to Committee membership. All parties in interest will have an opportunity to review and, if they wish, object to such fees, and final allowance of all fees to the Committee's bankruptcy counsel is subject to Court approval.

(c)    **Potential Asserted Administrative Claim by FEI Shale.** FEI Shale has stated that it believes it may have a "potential claim pursuant to § 507(b) for funds used from the Project Account during the Bankruptcy Case." HPI disputes FEI Shale's contention, believing instead that FEI Shale's rights and claims are limited as set forth in the orders of the Bankruptcy Court granting the Debtors the right to use FEI Shale's cash collateral and granting FEI Shale adequate protection for that cash usage. To date, FEI Shale has not filed a request for administrative claim.

(d)    **Other Asserted Administrative Claims.** The following motions for allowance of administrative claim have been filed: Baker Hughes Oilfield Operations, Inc. in the amount of $17,720.64; TanMar Rentals, LLC in the amount of $10,027.84; and J-W Power Company in the amount of $26,406.05. Further, SEECO, Inc. has asserted a right to receive $17,744.86 through June 30, 2009 which SEECO, Inc. states is the Debtors' portion of expenses incurred incident to the drilling and completion of various wells and lease operating expenses. It has also come to HPI's attention that there are or may be additional unpaid post-petition operating expenses. To date, HPI is aware of approximately $923,000.00 in such unpaid expenses.

(e)    **Payment of Administrative Claims.** As stated in the Plan, Allowed Administrative Claims shall be paid first from the Project Account and/or the HPI Operating Account to the extent funds are available for payment of such Claims and then by the Trustee of Trust I. Depending upon the amount of funds available in the Project Account and/or the HPI Operating Account, it is possible that a material amount of administrative claims will be paid from the funds available in Trust I. Payment of Allowed Administrative Claims by the Trustee of Trust I is not technically a surcharge against HPI's collateral under § 506(c) of the Code as pointed out by FEI Shale in its objection to this Disclosure Statement. However, this point is rather moot given that it is HPI that is funding cash into Trust I.

**4.2    Scheduled and Known Secured and Priority Claims, Pending Litigation: All Debtors.** The scheduled and filed Claim amounts listed below do not include the accrual of interest after the filing of the Cases, to the extent such post-petition interest may be applicable.

**(A)**   **Hallwood Energy, LP**

    **(a)**   **Secured Claim of HPI.** In summary, HPI holds a claim in excess of $118,000,000.00 secured by a first lien on all of the assets of all of the Debtors (the "HPI Secured Claim"). HPI's Senior Secured Claim is secured by all assets of Hallwood Energy, including the stock of Hallwood Energy's subsidiaries, also Debtors herein, and all of the assets of each of the other Debtors herein, save an except the Project Account funded by FEI Shale, L.P. discussed herein. Each of the other Debtors also guaranteed HPI's Senior Secured Claim against Hallwood Energy. The details of HPI's Senior Secured Claim are as follows.

    Pursuant to a certain Credit and Guaranty Agreement dated as of April 19, 2007 (as same has been subsequently modified or amended, the ("Senior Secured Credit Agreement") between Hallwood Energy and HPI, HPI established in favor of the Debtors a senior secured credit facility in the maximum amount of $100,000,000 together with certain other financial accommodations. Hallwood Energy secured its obligations to HPI under the Senior Secured Credit Agreement by granting to HPI a first priority lien on all of its assets, including a pledge of all of the capital stock of each of the other Debtors. Each of the other Debtors is a guarantor of Hallwood Energy's obligations under the Senior Secured Credit Agreement.

    Pursuant to the terms of the Senior Secured Credit Agreement, Hallwood Energy agreed to deposit or cause to be deposited all gross cash revenues and receipts from any source or activity into only specified deposit accounts covered under a deposit account control agreement with HPI. The Senior Secured Credit Agreement and all notes, security agreements, deposit account control agreements, guaranty agreements, mortgages, subordination and intercreditor agreements, lien waivers, assignments, pledges, and other instruments or documents executed in connection therewith or related thereto shall be referred to herein as the "Senior Secured Credit Documents."

    Pursuant to a certain Second Lien Credit and Guaranty Agreement dated as of January 18, 2008 (as same has been subsequently modified or amended, the ("Junior Secured Credit Agreement") between Hallwood Energy and HPI, HPI established in favor of the Debtors a junior secured credit facility in the maximum amount of $15,000,000 together with certain other financial accommodations. Hallwood Energy secured its obligations to HPI under the Junior Secured Credit Agreement by granting to HPI a second priority lien on all of its assets. Each of the other Debtors is a guarantor of Hallwood Energy's obligations under the Junior Secured Credit Agreement.

    Pursuant to the terms of the Junior Secured Credit Agreement, Hallwood Energy agreed to deposit or cause to be deposited all gross cash revenues and receipts from any source or activity into only specified deposit accounts covered under a deposit account control agreement with HPI. The Junior Secured Credit Agreement and all notes, security agreements, deposit account control agreements, guaranty agreements, mortgages, subordination and intercreditor agreements, lien waivers, assignments, pledges, and other

instruments or documents executed in connection therewith or related thereto shall be referred to herein as the "Junior Secured Credit Documents."

Together, the Senior Secured Credit Documents and the Junior Secured Credit Documents shall be referred to herein as the "Pre-petition Claim Documents." Under the Pre-petition Claim Documents and applicable law, HPI thus holds a valid, enforceable, and allowed claim against the Debtors as of the Petition Date in the amount of at least $118,000,000, inclusive of accrued but unpaid interest, fees and costs ("HPI's Senior Secured Claim" as defined above).

HPI's Senior Secured Claim is secured by fully enforceable and properly perfected first-priority liens and security interests in all of the property of the Debtors including, without limitation, all of the following property (as further provided and more fully described in the Pre-petition Claim Documents, the "Pre-petition Collateral"), but not including the Project Account as defined herein:

(a)     Accounts;

(b)     Chattel Paper;

(c)     Documents;

(d)     General Intangibles;

(e)     Goods (including Inventory and Equipment);

(f)     Instruments;

(g)     Insurance;

(h)     Intellectual Property;

(i)     Investment Related Property (including the equity interests of Hallwood Energy in its subsidiaries Hallwood Petroleum, LLC, HG II Management, LLC, and Hallwood Gathering, LP, also Debtors herein and guarantors of the Senior Note);

(j)     Letter of Credit Rights;

(k)     Money (including a lien on $3,200,000.00 cash held by Hallwood Group Incorporated in a segregated account for the benefit of Hallwood Energy, subject to a superior lien held by FEI Shale, L.P.);

(l)     Receivables and Receivable Records;

(m)     Commercial Tort Claims;

(n)     to the extent not otherwise included above, all Collateral Records, Collateral Support and Supporting Obligations relating to any of the foregoing;

(o)     to extent not otherwise included above, all Proceeds, products, accessions, rents and profits of or in respect to any of the foregoing;

(p)     all of Hallwood Energy's oil and gas properties, located in the States of Texas, Arkansas, Mississippi and Louisiana;

(q)     all assets of Hallwood Energy Management, LLC, Hallwood Energy's general partner, and all the assets of Hallwood Energy's subsidiaries Hallwood Petroleum, LLC, HG II Management, LLC, Hallwood Gathering,

LP, and Hallwood SWD, LLC, all Debtors in this jointly-administered case; and

(r)     to the extent not otherwise set forth herein, all other Collateral defined as such in the Pre-petition Claim Documents.

The foregoing categories of Pre-Petition Collateral are more specifically defined in the Pre-petition Claim Documents. HPI's liens and security interests in the Pre-petition Collateral were granted pursuant to the Pre-petition Claim Documents. HPI has properly perfected its first priority liens and security interests in the Pre-petition Collateral by documents filed with the appropriate state and county offices, possession of certain documents and control of collateral accounts. The Pre-petition Claim Documents are genuine, valid, existing, and legally enforceable.

The Debtors were, as of the Petition Date, and remain in default of their debts and obligations to HPI under the Pre-petition Claim Documents. These defaults exist, have not been timely cured, and are continuing. The filing of this Case has accelerated HPI's Senior Secured Claim for all purposes in this Case and in connection with HPI's enforcement of its rights and remedies under applicable law. HPI's Senior Secured Claim remains due and owing.

HPI holds enforceable, non-avoidable, and perfected liens and security interests in the Pre-petition Collateral and Cash Collateral (as defined herein), in the amount of HPI's Senior Secured Claim, plus, without limitation, any other amounts allowable under the Bankruptcy Code and applicable law whether pre-petition or post-petition. The Bankruptcy Court has granted HPI's stay motion and permitted HPI to post its Pre-petition Collateral for foreclosure, and take possession of its Pre-petition Collateral including the Cash Collateral and oil and gas properties. (See Exhibit "B.")

The HPI Secured Lenders hold a security interest and lien in all HPI claims against the Debtors, including the HELP/HPI Notes, and in all of the HPI Collateral to secure the payment of the HPI Secured Lender Note, which security interest and lien shall continue in effect after the transfer of the HELP/HPI Notes and HPI Collateral to HPE. In the event of foreclosure by HPE on any of the HPI Collateral or the transfer of title by the Debtors to HPE of any of the HPI Collateral, HPE shall simultaneously execute a mortgage and security agreement covering such property in favor of the HPI Secured Lenders which mortgage and security agreement shall evidence the existing and continuing security interest and lien of the HPI Secured Lenders in and to such property. Such mortgage and security agreement shall be in form and substance acceptable to the HPI Secured Lenders.

Under the Plan, HPI will have an Allowed Claim in the amount of $118,000,000 of which $28,000,000 will be an Allowed Secured Claim and $90,000,000 will be an Allowed Unsecured Claim. The amount of the Allowed Secured Claim is an estimation of the value of HPI's Collateral based on the Court's findings of fact and conclusions of law (attached hereto as Exhibit "B") in which the Court previously accepted the Debtors' going concern valuation of their assets in the $28.1 - $38.2 million range. The

HPI Secured Lenders shall own and hold a continuing security interest and lien in all amounts payable to HPI or HPE from Trust I and Trust II. HPI and HPE shall execute a security agreement covering such payments in form and substance acceptable to the HPI Secured Lenders.

The continuing security interests and liens of the HPI Secured Lenders in all HPI claims against the Debtors, including the HELP/HPI Notes and the HPI Collateral and all proceeds and products thereof, and the obligation of HPI and/or HPE to execute new mortgages and security agreements as provided herein, shall be acknowledged and confirmed in the Confirmation Order in form and substance acceptable to the HPI Secured Lenders.

(b)   **Potential Secured Claim of FEI Shale, LP**: In addition to the secured claim of HPI, the Schedules filed by Hallwood Energy reflect a secured claim in an unknown amount in favor of FEI Shale. FEI Shale has filed a proof of claim in these Cases asserting a secured claim in excess of $6,600,000 (the "FEI Shale Claim"). As detailed herein, Hallwood Energy and FEI Shale are parties to an agreement entitled Acquisition and Farmout Agreement dated June 9, 2008 (the "Farmout Agreement") which contemplated that, pursuant to budgets submitted by the Debtors to FEI Shale, FEI Shale would provide funds to the Debtors for operational costs. In consideration of that funding, FEI Shale would earn an undivided interest in certain of the Debtors' assets as specified in the Farmout Agreement. Incident to the Farmout Agreement, the Debtors established a separate deposit account (the "Project Account") into which funds advanced by FEI Shale were placed. It is clearly FEI Shale's position that the Farmout Agreement granted FEI Shale a first priority security interest in the funds in the Project Account to secure the Debtors' obligation to assign the undivided interest in the Debtors' assets contemplated in the Farmout Agreement. On the Schedules filed by Hallwood Energy, Hallwood Energy lists a n "asserted" secured claim by FEI Shale, but lists that claim as unknown in amount as well as contingent, unliquidated and disputed. FEI Shale has filed a motion to compel the Debtors to assume or reject the Farmout Agreement and a motion to lift the stay. The Bankruptcy Court has entered an order terminating the Farmout Agreement and lifting the stay to permit FEI Shale to take possession of the Project Account except certain amounts reserved for payment of general and administrative expenses, professional fees and health, safety and environmental expenses. (See Exhibit "C.")

Negotiations for agreed treatment of FEI Shale's claim(s) under the Plan are ongoing. At present, for purposes of adequate disclosure and in response to FEI Shale's objection to this Disclosure Statement, HPI would state that FEI Shale contends that, under Option A in the Plan, FEI Shale has a right to assert an administrative claim under § 507(b) of the Code, a right to seek surcharge of HPI's Collateral under § 506(c) of the Code, and a right to seek a determination of ownership and extent and validity of liens on certain pipe inventory. HPI disputes each of these alleged "rights."

(c)   **Potential Secured Claim of M&M Lien Holders**: Although the Debtors did not list any M&M Liens on their Schedules, the Debtors have provided HPI with a list of potential M&M Liens. The potential M&M Liens total approximately $6.6 million with

roughly two-thirds of that amount relating to properties in Texas and one-third properties in Arkansas. The relative priority of those asserted liens, as well as issues incident to the perfection of same, has not yet been determined.

    **(d)**    **Priority Claims**: The Schedules filed by Hallwood Energy reflect the following priority claims:

| *Claimant* | *Amount* |
|---|---|
| City of Cleburne | $0.00 |
| Cleburne ISD | $0.00 |
| Dallas County Tax Assessor | $2,016.47 |
| Harris County | $0.00 |
| Harrison County, Texas | $0.00 |
| Hill County Junior College | $0.00 |
| Internal Revenue Service | $0.00 |
| Johnson County, Texas | $0.00 |
| San Patricio County | $0.00 |
| White County, Arkansas | $36,657.35 |

    The Plan Proponents cannot dispute or validate these alleged priority claims based upon the information known at this time.

    **(e)**    **Unsecured Claims Arising from the Assumption or Rejection of Executory Contracts**: Under the Plan, HPI will have the right to designate which executory contracts (contracts to which one or more of the Debtor entities was a party) will be assumed or rejected. Pre-petition, certain of the Debtors were parties to joint operating agreements (a "JOA"). Pursuant to those JOA's, the Debtors were either an operator or a non-operator, and the Debtors incurred payment obligations. FEI Shale has raised an issue that it has an economic interest in HPI's assumption or rejection of the JOA's to which one or more of the Debtors was a party. Generally, HPI recognizes that if HPI rejects an executory contract, that rejection may give rise to a rejection damages claim in favor of the other contracting party in accordance with § 365(g) of the Code. If HPI assumes an executory contract, that assumption gives rise to a cure obligation under § 365(b). The Plan so provides. Specifically with regard to the JOA's to which a Debtor was a party, FEI Shale suggests that upon rejection of a JOA, such rejection may give rise not only to a true rejection damages claim, but may also give rise to additional claims asserted by other parties (such as FEI Shale) who have an economic interest in the Debtor's performance under the JOA. The determination to assume or reject any executory contract, including the JOA's, will be made

by HPI mindful of the claims to which that assumption or rejection gives rise. On or before September 23, 2009 (which date is seven (7) calendar days prior to the voting deadline) HPI will file a notice setting forth which JOA's, together with all executory contracts to which SEECO, Inc. is a party, it intends to assume or reject.

**(f)    Pending Litigation**: Hallwood Energy lists the following pending litigation:

| Style of Case | Status |
|---|---|
| *Lavelle T. Paschal v. Wade Love, Hallwood Petroleum, LLC and Hallwood Energy, LP*; Case No. 4:08-CV-02493; personal injury; U.S .District Court for the Southern District of Texas | pending |
| *Premier Pipe, LLC v. J.D. Fields & Company, Inc., Hallwood Petroleum, LLC and Hallwood Energy, LP*; Cause No. 2008-57050; District Court for 189th Judicial District, Harris County | pending |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, L.P.*; Adversary Case No. 07-1209; U.S. Bankruptcy Court, Western District of Oklahoma | settled pending court approval |
| *Hallwood Petroleum LLC and Hallwood Energy, L.P. v. Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC*; Adversary Case No. 08-1007; U.S. Bankruptcy Court, Western District of Oklahoma | settled pending court approval |
| *James R. Usery and Rhonda S. Usery as Trustee for the Jim and Rhonda Usery Revocable Trust v. Anadarko Petroleum Corp. and Hallwood Energy, LP*; Case No. 09-1113; U.S. Court of Appeals for the Eighth Circuit | pending |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, L.P.*; Adversary Case No. 07-03282; U.S. Bankruptcy Court for the Southern District of Texas | settled |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, L.P.*; Cause No. 348-219823-06; 348th Judicial District Court, Tarrant County, Texas | pending |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, LP.*; Case No. CJ-2006-1694-L; District Court of Cleveland County, Oklahoma | pending |

**(B)**  **Hallwood Energy Management, LLC, a Delaware Limited Liability Company**

Other than HPI's Senior Secured Claim, the Schedules filed by this Debtor do not reflect any other liabilities.

**(C)**  **Hallwood Gathering, L.P., a Delaware Limited Partnership**

Other than HPI's Senior Secured Claim, the FEI Shale Claim and a $500.00 claim for partnership taxes owed to the IRS, the Schedules filed by this Debtor do not reflect any other liabilities.

**(D)**  **HG II Management, LLC, a Delaware Limited Liability Company**

Other than HPI's Senior Secured Claim, the Schedules filed by this Debtor do not reflect any other liabilities.

**(E)**  **Hallwood Petroleum, LLC, a Delaware Limited Liability Company**

The Schedules filed by this Debtor list HPI's Senior Secured Claim, the FEI Shale Claim, and the amount of $64,456.93 as alleged priority claims of employees for wages and related taxes and benefits. As for pending litigation, Hallwood Petroleum lists the following:

| Style of Case | Status |
|---|---|
| *In re Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, L.P.*; Adversary Case No. 07-03282; U.S. Bankruptcy Court for the Southern District of Texas | settled |
| *Lavelle T. Paschal v. Wade Love, Hallwood Petroleum, LLC and Hallwood Energy, LP*; Case No. 4:08-CV-02493; personal injury; U.S .District Court for the Southern District of Texas | pending |
| *Premier Pipe, LLC v. J.D. Fields & Company, Inc., Hallwood Petroleum, LLC and Hallwood Energy, LP*; Cause No. 2008-57050; District Court for 189th Judicial District, Harris County | pending |
| *Oil Country Tubular Corporation v. Hallwood Petroleum, LLC*; Case No. 2:08-cv-03546-MVL-JCW; United States District Court, Eastern District of Louisiana, Magistrate Court, Division 2 | pending |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, L.P.*; Adversary Case No. 07-1209; U.S. Bankruptcy Court, Western District of Oklahoma | settled pending court approval |

| | |
|---|---|
| *Hallwood Petroleum LLC and Hallwood Energy, L.P. v. Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC*; Adversary Case No. 08-01007; U.S. Bankruptcy Court, Western District of Oklahoma | settled pending court approval |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, LP.*; Case No. CJ-2006-1694-L; District Court of Cleveland County, Oklahoma | pending |
| *Eagle Domestic Drilling Operations, LLC and Eagle Drilling, LLC v. Hallwood Petroleum, LLC and Hallwood Energy, L.P.*; Cause No. 348-219823-06; 348th Judicial District Court, Tarrant County, Texas | pending |

**(F)    Hallwood SWD, LLC, a Delaware Limited Liability Company**

Other than the amount owed to HPI based on the Junior Secured Credit Documents, approximately $15,500,000.00 the Schedules filed by this Debtor do not reflect any other liabilities.

**4.3    Unsecured Claims: All Debtors.**  Each of the Debtors has filed Schedules which list creditors holding unsecured nonpriority claims in the below amounts:

| ENTITY | SCHEDULE F: UNSECURED NON-PRIORITY CLAIMS |
|---|---|
| Hallwood Energy, L.P. | $49,414,924.00 |
| Hallwood Energy Management, LLC | $0.00 |
| Hallwood Gathering, L.P. | $0.00 |
| HG II Management, LLC | $0.00 |
| Hallwood Petroleum, LLC | $11,560,382.85 |
| Hallwood SWD, LLC | $0.00 |

The bar dates for filing additional proofs of claim against each of the Debtors is July 8, 2009.

## ARTICLE V

## MATTERS ARISING DURING THE CHAPTER 11 CASES

**5.1    Commencement of the Debtors' Cases.**  Each of the Debtors' Chapter 11 cases was commenced by the filing of a voluntary petition under Chapter 11 on the dates identified herein as each Debtor's Petition Date.  Shortly after these cases were commenced, the Debtors filed several motions incident to the management of the Bankruptcy Cases that were granted by the Court,