U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed October 16, 2009**                                  **United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | |
|---|---|
| IN RE : | ) |
| | ) |
| HALLWOOD ENERGY, L.P., | ) CASE NO. 09-31253 |
| A DELAWARE LIMITED PARTNERSHIP, | ) JOINTLY ADMINISTERED |
| HALLWOOD ENERGY | ) |
| MANAGEMENT, LLC, A DELAWARE | ) CHAPTER 11 |
| LIMITED LIABILITY COMPANY, | ) |
| HALLWOOD GATHERING, L.P., | ) |
| A DELAWARE LIMITED PARTNERSHIP, | ) |
| HG II MANAGEMENT, LLC, | ) |
| A DELAWARE LIMITED LIABILITY COMPANY, | ) |
| HALLWOOD PETROLEUM, LLC, | ) |
| A DELAWARE LIMITED LIABILITY COMPANY, | ) |
| HALLWOOD SWD, LLC | ) |
| A DELAWARE LIMITED LIABILITY COMPANY, | ) |
| | ) |
| DEBTORS. | ) |

### ORDER CONFIRMING FIRST AMENDED JOINT PLAN OF
### REORGANIZATION FOR THE DEBTORS PROPOSED
### <u>BY HALL PHOENIX/INWOOD, LTD.</u>

On the 7th day of October, 2009, came on before the Court the confirmation hearing on the

First Amended Joint Plan of Reorganization for the Debtors proposed by Hall Phoenix/Inwood, Ltd.,

---

as modified by the Modification to First Amended Joint Plan of Reorganization filed on October 6, 2009 (the "Plan") filed by Hall Phoenix/Inwood, Ltd. ("HPI" or "Plan Proponent"); and the Court having considered the Plan, the ballot tally, the evidence presented at the hearing; and all objections to the Plan having been resolved, withdrawn, overruled by the Court or cured by the terms of this Order; and the Court having made its findings of fact and conclusions of law orally on the record, which findings and conclusions are incorporated by reference herein and set forth in part as follows (capitalized terms used in this Order and not defined herein shall have their respective meanings set forth in the Plan, or if not defined in the Plan, as defined in the Bankruptcy Code).

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

1. On March 1, 2009 (the "Petition Date"), the Debtors commenced these cases under Chapter 11 of the Bankruptcy Code. The cases are jointly administered pursuant to an order of this Court. The cases have not been substantively consolidated.

2. On March 12, 2009, as amended on April 7, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

3. The First Amended Joint Plan of Reorganization for the Debtors Proposed by Hall Phoenix/Inwood, Ltd. and the First Amended Disclosure Statement for First Amended Joint Plan of Reorganization for the Debtors proposed by Hall Phoenix/Inwood, Ltd. ("Disclosure Statement") were filed on August 27, 2009. The Disclosure Statement was approved by this Court by order entered on August 28, 2009. The deadline for filing objections to the Plan was September 30, 2009. The deadline for voting to accept or reject the Plan was September 30, 2009.

4. On August 28, 2009, after proper notice and hearing as required by 11 USC §1125(b), this Court approved the Disclosure Statement and authorized the Plan Proponent to solicit votes with respect to the Plan.

5. The Plan, Disclosure Statement, the Order Approving Disclosure Statement and a Ballot for solicitation of votes were mailed to all creditors and parties in interest entitled to receipt of same in accordance with the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, and the orders of this Court.

6. The Court has jurisdiction in this matter pursuant to 28 USC §1334. This is a core proceeding pursuant to 28 USC §157(b)(2)(L).

7. The Plan Proponent proposed the Plan in good faith to provide for the treatment of all claims against the Debtors and their properties.

8. Notice of the Plan has been in compliance with 11 USC §§1125 and 1126 and Bankruptcy Rules 3017 and 3018 and other applicable authority. All creditors, and other parties in interest, in accordance with the orders of this Court, received due and appropriate notice of (a) the Plan; (b) the time within which ballots must have been received by HPI; (c) the time within which objections to confirmation must have been filed; and (d) the Confirmation Hearing.

9. It appears that solicitation of ballots in connection with the Plan was in compliance with applicable law.

10. The Plan has been accepted by the requisite number of holders of impaired claims and interests in both dollar amount and number. The Court accepts as credible evidence the ballot certification presented to the Court.

11. All objections filed to confirmation of the Plan were fully considered by the Court, and were each either overruled, withdrawn, or resolved by agreement with the exception of one. The Court sustains the objection made by The Hallwood Group Incorporated ("HGI") and by certain current and former officers and directors of the Debtors and HGI that the Plan violates §553 and therefore §1129(a)(1), to the extent the Plan might be construed to divest HGI and these officers and directors of whatever setoff or recoupment rights they have, or other claims or defenses that they might be entitled to raise defensively in any future litigation waged by the Trustee of Trust I. The Court, however, finds that if HPI adds language to the confirmation order that reserves such rights, the Court will confirm the Plan.

12. The Plan meets all requirements of 11 USC §§1122, 1123 and 1129. Specifically, the classification of claims and interests is proper and consistent with 11 USC §1122; the implementation of the Plan appears to be proper and within the guidelines of 11 USC §1123; and the Plan complies with the applicable provisions of Title 11, except as to 11 USC §553 which would be addressed by the inclusion of appropriate language in the confirmation order.

13. The Plan Proponent has complied with the applicable provisions of Title 11.

14. The Plan has been proposed in good faith and not by any means forbidden by law.

15. Any payment made or to be made by the Plan Proponent, by the Debtors, or by a person issuing securities (not applicable) or acquiring property under the Plan, for services, or for costs and expenses in connection with the Case or the Plan has been approved by or is subject to approval of the Court as reasonable.

16. The Plan Proponent has disclosed the identity and affiliations of any individual proposed to serve after confirmation as director, officer, or voting trustee of the Debtors, an affiliate of the Debtors, or a successor to the Debtors.

17. The Plan meets the so-called "best interests" test. Specifically, with respect to each impaired class of Claims or Interests, each holder of a Claim or Interest has either accepted the Plan, or such holder will retain or receive under the Plan property of a value as of the Effective Date that is not less than it would receive in a Chapter 7 liquidation.

18. With respect to each Class in the Plan, the Court finds that all Classes except for equity have either accepted the Plan or such Class is not impaired under the Plan. The Court accepts the ballot tally that was submitted to the Court as credible evidence of this and the Court accepts the modifications that were proposed in open Court.

19. With respect to the non-accepting Class, equity, the Court finds that the Plan may be appropriately crammed down on them as proposed in that the Plan is fair and equitable and does not discriminate in any way against them, as contemplated by the provisions of 11 USC §1129(b).

20. With regard to 11 USC §1129(a)(9) and the Plan's treatment with regard to administrative expense claims and certain types of priority claims, the Court believes that the evidence here today showed that the Plan does comply with 11 USC §1129(a)(9), as it appears that HPI has made appropriate provision to take care of these claims as required under 11 USC §1129(a)(9).

21. The Plan meets the so-called feasibility test. Specifically, the Plan is actually a liquidation plan. So the Court believes that the Plan is not likely to be followed by liquidation, except that liquidation which is proposed by the Plan.

22. All Trustee's fees are to be paid under the Plan.

23. The Court finds it is appropriate to treat the Plan as modified as the Plan. The Court will deem the acceptances of the Plan to apply as modified without any further notice, solicitation, or hearing being required, since the Court finds the proposed plan modifications do not adversely change the treatment of the Claim of any Creditor or Interest holder who has not accepted in writing the modification.

24. Now, last but not least the Court is going to specifically deal with the so-called plan releases of non-debtor third parties, specifically HPI, Hall, Braun, and the various representatives or affiliates of HPI. The Court has determined and finds that Section 6.01 of the Plan is not the type of impermissible plan release or exculpation clause described by the 5th Circuit in *In the Matter of: The Pacific Lumber Company, et al. vs. Official Unsecured Creditors' Committee, et al.*, 2009 WL 3082066 (C.A.5 (Tex.)). First, the Court finds that Section 6.01 is more in the nature of a compromise and settlement that may occur in a plan pursuant to 11 USC §1123(b)( 3)(A). That section specifically provides that a "plan may provide for the settlement of adjustment of any claim or interest belonging to the debtor or the estate". What the Court has determined is happening in Section 6.01 is not the type of blanket release or exculpation of non-debtor third parties that we sometimes see slipped in a plan without notice. And, again, the Court does not think it is the type of thing that was being frowned upon in the *Pacific Lumber* opinion.

25. Moreover, in the case at bar an adversary proceeding was filed against HPI and Mr. Hall and Mr. Braun in June 2009. This Court essentially held a mini-trial (I think that was the Court's exact words) on the claims asserted in that adversary last summer in connection with HPI's motion to lift stay. The Court found that these claims asserted in this adversary proceeding were

not colorable. The Debtor ended up dismissing the adversary proceeding later when a Rule 11 motion was threatened, or Rule 11 demand was made. The Committee, which is a fiduciary to the unsecured creditors in this case, has represented it investigated the claims and decided they were not worth pursuing and it was not in the best interest of their constituency that these claims be pursued. And all in all, the Court believes it has heard the type of evidence it needs to hear in a Rule 9019 context both today and last summer. The Court will take judicial notice of the record from last summer on the HPI motion to lift stay.

26. Moreover, Judge Jones did not in her *Pacific Lumber* opinion preclude consensual releases in plans. The Plan with this bold release has essentially been overwhelmingly consented to by the overwhelming votes in favor of the Plan by all Creditors. The only ones who have not consented to the so-called releases are officers and directors who have not filed proofs of claim and HGI, the former equity holder who is entitled to no value in this case under 11 USC §1129 on account of its equity interest and whose only proof of claim relates to subordinated notes with regard to which it has subordinated its right to recovery in favor of HPI.

27. The Court reserves the right to supplement or amend these findings and conclusions, but all in all, the Court finds 6.01 of the plan to be permissible and not problematic under the 5th Circuit's new ruling.

THEREFORE, based upon the foregoing findings of fact and conclusions of law, it is hereby:

ORDERED that the Plan is and shall be hereby confirmed in all respects pursuant to 11 USC §1129(a); and it is further

ORDERED that the objections to confirmation of the Plan which have not been resolved by agreement are hereby overruled with the one exception noted in the Court's findings and resolved by HPI's agreement to the terms of this Order; and it is further

ORDERED that the Trustee of Trust I shall be Ray Balestri and the Trustee of Trust II and Trust III shall be Douglas J. Brickley of LECG, LLC; and it is further

ORDERED that the form of the Trust Agreements that were admitted as HPI Exhibits 9, 10 and 11 at the hearing are approved; and it is further

ORDERED that each Trustee is appointed as the representative of the Estates pursuant to 11 USC §1123(b)(3) the same as if such Trustee had been appointed under 11 USC §1104 to pursue the Causes of Action in his respective Trust and shall be the only entity authorized to pursue such actions; and it is further

ORDERED that all of the existing ownership interests in the Debtors held by any non-Debtor party are hereby canceled and, on the Effective Date, the Debtors are authorized and directed to issue new ownership interests in each of the Debtors to Trust I which new ownership interests shall represent all of the outstanding ownership of the Debtors; and it is further

ORDERED that HPI is authorized to execute any necessary documentation on behalf of the Debtors to effect the transfer of the HPI Collateral to Hall Phoenix Energy, LLC ("HPE"); and it is further;

ORDERED that the security interests and liens held by the HPI Secured Lenders in all HPI claims against the Debtors, including the HELP/HPI Notes and in all the HPI Collateral and all proceeds and products thereof, to secure the HPI Secured Lender Note, shall continue in effect after the transfer of the HELP/HPI Note and HPI Collateral to HPE and after confirmation of the Plan.

Upon the foreclosure by HPE of the HPI Collateral or the transfer of title from the Debtors to HPE of any of the HPI Collateral, HPE shall simultaneously execute new mortgages and security agreements in favor of the HPI Secured Lenders as provided in the Plan in form and substance acceptable to the HPI Secured Lenders to evidence the existing and continuing security interest and lien of the HPI Secured Lenders. The HPI Secured Lenders shall own and hold a continuing security interest and lien in all amounts payable to HPI or HPE on HPI's Allowed Secured Claim (excluding reimbursement of monies funded by HPI from sources other than the HPI Collateral) from Trust I and Trust II and HPI and HPE shall execute a security agreement covering such payments in form and substance acceptable to the HPI Secured Lenders; and it is further

ORDERED that all claims of the Debtors and their estates against HPI, HPE, Craig Hall, Don Braun and their affiliated entities, partners, members, shareholders, officers, directors and agents are hereby released; and it is further

ORDERED that FEI Shale's Claims shall be treated in accordance with Option B of the Plan as finally modified and set forth in Exhibit "A" attached hereto and incorporated herein; and it is further

ORDERED that the Debtors, HPI, HPE and FEI Shale are hereby authorized and directed to take all actions necessary to effect the transactions and transfers required to implement the terms of FEI Shale's treatment as described in Exhibit "A;" and it is further

ORDERED that the Plan Proponent's assumption and rejection of certain executory contracts as described in the Notice of Intent to Assume or Reject Certain Executory Contracts [Docket No. 546] ("Notice of Intent") filed on September 30, 2009 is approved, subject to the provisions below

with respect to Chesapeake Exploration, LLC and Chesapeake Operating, Inc. ("Chesapeake"); and it is further

ORDERED that the following agreement between the Plan Proponent and Chesapeake is hereby approved and incorporated into the Plan:

1. All joint operating agreements between the Debtors and Chesapeake for properties located in Texas are assumed and assigned to FEI Shale on the Effective Date;

2. Joint operating agreements between the Debtors and Chesapeake for properties located in Arkansas that are identified in the Notice of Intent are assumed; the Plan Proponent may amend the Notice of Intent to add other joint operating agreements with Chesapeake for properties located in Arkansas and may assume or reject said additional operating agreements;

3. All proposed cure amounts previously stated in the Notice of Intent or elsewhere with respect to Chesapeake executory contracts shall be of no force and effect; rather, the cure amounts for all assumed operating agreements between the Debtors and Chesapeake will be determined and paid in accordance with this Order;

4. The Plan Proponent, FEI Shale and Chesapeake will resolve the pre-petition amounts owed to Chesapeake with respect to the Debtors' properties in Texas and Arkansas within 30 days of entry of this Order;

5. HPI shall pay such agreed amounts (in accordance with the terms of Option B as to properties in Texas; provided, however, nothing in Option B and/or the Plan shall limit the obligations of HPI to Chesapeake under this Order) within thirty days of entry of this Order;

6. HPI shall pay to Chesapeake all agreed amounts owed for post-petition obligations relating to properties in Arkansas within 30 days of this Order;

7. At the time HPI pays in full all unpaid joint operating expenses owed through the date of this Order for all assumed joint operating agreements with Chesapeake and all other post-petition obligations, Chesapeake will apply as credits all funds it is holding in suspense with respect to production from the Debtors' properties against the Debtor's obligations in accordance with Chesapeake's rights of setoff and recoupment as asserted in its pending motion;

8. Within ten (10) days of this order, Chesapeake will present the Debtors an initial list of invoices and amounts due with respect to unpaid well elections that expired post-petition; within thirty (30) days of this order Chesapeake may furnish a supplemental list thereof; for any and all wells on each list in which Debtors wish to participate, HPI must pay all election expenses that are due under the governing operating agreement(s) within 10 days of receipt of the list; for any election not paid in full in such manner within 10 days of receipt of the list, the Debtors will be deemed to have elected to be treated as a non-consenting owner as to such well, and Chesapeake may enforce all provisions of the governing operating agreement against the Debtors or their assignees with respect to such well; the Debtors' right to participate in a well shall be contingent upon the Debtors' payment in full of all obligations then due under any joint operating agreement(s) and other existing agreements covering the drilling of that well;

9. Any amounts owed to Chesapeake that cannot be resolved by agreement of the parties will be determined by the Court in connection with Chesapeake's pending objection to the Notice of Intent, motion for allowance of administrative expense claims, and/or motion for relief from stay to permit recoupment and setoff; and it is further

ORDERED that except as otherwise provided in the Plan or in this Order, on the Effective Date the Trust Assets shall be conveyed to the respective Trusts free and clear of all Liens, Claims and encumbrances; and it is further

ORDERED that all Creditors and Persons who have held, hold or may hold Claims or Interests, are permanently enjoined on and after the Effective Date against the: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtors, or the Trusts on account of Claims against or Interests in the Debtors; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtors or the Trusts, or any assets or property of same; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtors or the Trusts, arising from a Claim; and it is further

ORDERED that all approvals and consents of the Equity Interest holders, and officers and directors of the Debtors, as may be necessary to implement and carry out the Plan and the actions authorized by this Order be, and they hereby are, deemed made or done; and it is further

ORDERED that no transfer of a claim against or a beneficial interest in the Trust made on or after the Effective Date shall be effective unless evidenced by a notice of same executed by both

transferor and transferee which is filed with the Bankruptcy Court and served on the Trustee; and it is further

ORDERED that this Court shall retain jurisdiction over this case and related matters, proceedings and issues as set forth in the Plan and to the fullest extent allowed by the Bankruptcy Code; and it is further

ORDERED that this Order is hereby declared to be in recordable form, and shall be accepted by any recording officer for filing and recording purposes without further additional orders, certifications or other supporting documents; and it is further

ORDERED that each and every federal, state, commonwealth, local, foreign or other governmental authority, agency or department is hereby directed to accept any and all documents and instruments necessary, useful or appropriate to effectuate, implement or consummate the transactions contemplated by the Plan and this Order; and it is further

ORDERED that to the extent that the terms of the Plan conflict with any prior orders of this Court, the terms of the Plan shall be controlling; and it is further

ORDERED that any transfers made pursuant to the Plan or this Order are exempt from taxation in accordance with 11 USC §1146; and it is further

ORDERED that notwithstanding anything to the contrary in either the Plan or this Order, nothing in the Plan or this Order shall discharge, impair, negate, invalidate, or otherwise affect any rights to raise any Claims against the Debtors or interests in the Causes of Action as defenses or counterclaims, whether in setoff, recoupment, or otherwise, in any proceedings or lawsuits involving the Causes of Action; and it is further

ORDERED that within ten (10) days after the date of the entry of this Order, the Plan Proponent shall mail or cause to be mailed to all Creditors who have filed a proof of claim in this case (provided such claims have not previously been disallowed), parties who have filed a Notice of Appearance, parties to rejected leases or executory contracts and all other parties listed on the Debtors' master service list, notice of entry of this Order.

### End of Order ###

**SUBMITTED BY:**

Frank J. Wright
Paul B. Geilich
C. Ashley Ellis
**WRIGHT GINSBERG BRUSILOW P.C.**
600 Signature Place
14755 Preston Road
Dallas, TX 75254
(972) 788-1600
(972) 239-0138 (fax)
bankruptcy@hswgb.com

**ATTORNEYS FOR HALL PHOENIX/INWOOD, LTD.**

# EXHIBIT "A"

**HALLWOOD ENERGY/FEI SHALE
TERM SHEET**

The following bullet points shall be substituted for Option B under the Plan:

- FEI Shale agrees to transfer all of its interests in the Subject Properties located in states other than Texas, including, for the avoidance of doubt, all Related Properties associated therewith, regardless of location (the "***FEI Shale Transferred Subject Properties***") to HPE and the Debtors agree to transfer all of their interests in the Subject Properties located in the State of Texas, including, for the avoidance of doubt, all Related Properties associated therewith, regardless of location (the "Hallwood Energy Transferred Subject Properties") to FEI Shale.

- FEI Shale will transfer and convey the FEI Shale Transferred Subject Properties without any warranty of title, or other representations or warranties whatsoever (other than with respect to corporate authority, etc.). The Debtors will transfer the Hallwood Energy Transferred Subject Properties pursuant to Section 363 of the Bankruptcy Code, free and clear of all liens, claims and encumbrances, including all mortgage liens and other security interests held by HPI and/or its lenders. The Debtors will also transfer to FEI Shale ownership and possession of all original lease files, land files, well files and contract files maintained by the Debtors and relating to the Hallwood Energy Transferred Subject Properties. The Debtors will also transfer to HPE ownership and possession of all original lease files, land files, well files and contract files maintained by the Debtors and relating to the FEI Shale Transferred Subject Properties.

- The transfers described above (the "***Subject Property Transfers***") will occur simultaneously with each transfer representing sufficient and adequate consideration for the other. The FEI Shale Transferred Subject Properties are being transferred to HPE as designee of HPI in consideration for HPI's release of its liens on the Hallwood Energy Transferred Subject Properties. Each transferee will be entitled to receive, and be responsible for paying, respectively, the revenues and expenses accruing from the effective date (for purposes of this agreement the effective date shall be July 1, 2009, the date of entry of the stay order pursuant to HPI's stay motion) to the closing of the Subject Property Transfers (the "***Closing***") in respect of the Subject Properties to be transferred to it.

- Each transferee takes title subject to any valid liabilities associated with the condition of the Subject Properties to be transferred to it, including with respect to environmental matters, P&A and site restoration obligations, regardless of when such liabilities arise, accrue or accrued. Each transferee, specifically including HPE, has the right to elect not to take title to any portion of the Subject Properties to be transferred to it. In the event HPE elects not to take title to any of the FEI Shale Transferred Subject Projects, FEI Shale shall transfer those properties to the Debtor entities owned by Trust I.

- Within ten days after Confirmation, the Debtors will provide to FEI Shale a full accounting in such form and detail as FEI Shale may specify, of (i) all expenses paid or incurred and all revenues received or earned with respect to the Hallwood Energy Transferred Subject Properties and (ii) all other expenses paid from the Project Account from June 8, 2008 to the date of such accounting.

- HPI must pay in full within the later of (i) sixty (60) days after the Effective Date or (ii) the date of allowance of such claims: (i) all M&M liens that are senior to the liens of HPI with respect to the Subject Properties located in the State of Texas; and (ii) all claims of Chesapeake arising pre-petition in connection with the Subject Properties located in the State of Texas; and (iii) all claims of Chesapeake arising post-petition but prior to the Effective Date to the extent such claims relate to the Hallwood Energy Transferred Subject Properties (collectively, the "***Clean-Up Obligations***").

- FEI Shale agrees to assign to HPI all of its right, title and interest in and to the Project Account funds transferred to it in accordance with the lift stay order and any remaining Project Account funds that were retained by the Debtors under the lift stay order or any other orders of the Court. HPI shall use such funds for satisfaction of the Clean-Up Obligations and as otherwise permitted by order of the Bankruptcy Court of June 26, 2009.

- FEI Shale agrees to assign to HPI all of its interest in the tubular inventory that is in dispute. HPI shall use the first $4,000,000 of the Project Account funds and the funds from sale of tubular pipe inventory to fulfill the Clean-Up Obligations. To the extent any funds remain from such $4,000,000, HPI shall use those funds to reimburse FEI Shale for any legal fees incurred in connection with the Bankruptcy Case from the Petition Date to the Confirmation of the Plan and/or any unpaid liabilities that FEI Shale pays relating to the Subject Properties in West Texas.

- All matters with respect to proceeds of revenues attributable to the Hallwood Energy Transferred Subject Properties for the period from and after the effective date of the Subject Property Transfers must be approved by FEI Shale.

- If not previously terminated, at Confirmation, the Debtors will reject the Farmout Agreement and the Contract for Services and all other agreements entered into with FEI Shale in connection with the Farmout Agreement. FEI Shale shall not have any claim for damages as a result of the rejection of these agreements.

- FEI Shale agrees to farm out its interest in the leasehold associated with the sections adjacent to the Harrison 23-02 Well (*i.e.*, Van Horn Township Section 24, Blk. 113 and Section 1, Blk. 111, Culberson County, Texas) (the "***Farmout Lands***") to allow HPE or its assigns to drill a well, at its sole risk and expense, to the deeper of (i) a depth of 12,388' subsurface (or 15,991' MD total vertical depth assuming KB of 3,203') and (ii) a depth penetrating at least 150' into the Silurian-aged Fusselman formation, being the carbonate formation encountered in the Scott Unit 1H well (API No. 42109313620000) at the depth of 12,452' subsurface (15,674' MD total vertical depth) (the "***Target Formation***"), and earn 100% of FEI Shale's

- 2 -

working interest in the Farmout Lands (limited to the Target Formation), subject to the following provisions:

(A)   the initial test well must be (1) drilled to the Target Formation and (2) spud within two years of the Closing;

(B)   FEI Shale will retain a 5% proportionately reduced gross overriding royalty interest in the Farmout Lands calculated without deduction for production or post-production expenses except to the extent such deductions are permitted for the purposes of calculating the lessor royalty;

(C)   FEI Shale will have well information rights, including access to all technical information from well operations on the Farmout Lands such as core samples, rock geochemistry and other information to be specified;

(D)   PE shall not use the existing wellbore of the Harrison 23-02 Well or its flow line in connection with drilling, completion, tie-in or production operations on the Farmout Lands or any well thereon until such wellbore have been abandoned by FEI Shale;

(E)   HPE may not conduct subsurface operations within a 2,000 foot radius of the Harrison 23-02 wellbore without first obtaining FEI Shale's written consent or until such wellbore has been abandoned by FEI Shale; and

(F)   in the event HPE exercises its right to the farmout and the use of the wellbore, FEI Shale agrees to leave the casing in such wellbore and HPE agrees to assume responsibility for the assumed well including any subsequent abandonment and plugging costs.

- Upon Confirmation, HPI, the Debtors, on behalf of themselves and their respective bankruptcy estates, and the Debtors' non-Debtor affiliates over which the Debtors have control shall fully, finally and forever release FEI Shale and its affiliates and its and their respective successors and assigns from all claims, debts, liabilities, etc., known or unknown and whether arising under contract or sounding in tort, (including claims under chapter 5 of the Bankruptcy Code) relating to any pre-petition transfer of any Subject Properties, or interests therein, the ownership by FEI Shale of such Subject Properties, or interests therein, or in connection with the Farmout Agreement and the Waiver, Forbearance and Subordination Agreement and all other agreements executed in connection therewith, the acts or omissions of the parties thereunder, or otherwise in respect of the transactions, conduct and relationships arising or created thereunder.
- In addition to the foregoing, at Confirmation, FEI Shale shall fully, finally and forever release HPI, and its respective successors and assigns from all claims, debts, liabilities, etc., known or unknown and whether arising under contract or sounding in tort, in connection with the Farmout Agreement and the Waiver, Forbearance and Subordination Agreement and all other agreements executed in connection therewith; the acts or omissions of the parties thereunder; or otherwise in respect of the transactions, conduct and relationships

arising or created thereunder. FEI Shale agrees that the distribution in connection with its proofs of claim filed against the Debtors shall be limited to the transactions under this Option B.

- At the Closing, FEI Shale will execute and deliver in recordable form instruments cancelling the Memoranda of Acquisition and Farmout Agreement and releasing unconditionally all mortgage liens granted to FEI Shale encumbering the FEI Shale Transferred Subject Properties, in each case in form and substance reasonably satisfactory to the Debtors and HPI. FEI Shale will further execute and deliver a release of any other liens securing FEI Shale's claims against the Debtors, including its lien on any claims related to the ESA.

- At Closing, HPI and its lenders (to the extent necessary) will execute and deliver in recordable form instruments releasing unconditionally all mortgage liens and other security interests granted by any Debtor and encumbering the Hallwood Energy Transferred Subject Properties, in each case in form and substance reasonably satisfactory to the HPI Secured Lenders and FEI Shale.

- The Debtors, HPI and FEI Shale hereby acknowledge and agree that the compromise and settlement described in this Term Sheet, including the releases described in this section above (the "***Specified Releases***"), relate solely to the items and claims expressly described above (the "***Specified Released Claims***"). This Settlement is not intended to, nor shall have the effect of, releasing any rights or obligations of any parties with respect to any claims other than the Specified Released Claims, including any claims other than Specified Released Claims that are predicated on the Equity Support Agreement between HGI and Hallwood Energy (the "***ESA***"), to which FEI Shale is not a party but of which FEI Shale is an express third-party creditor beneficiary. This Settlement is not intended to, nor shall it have the effect of, releasing any claims by any party hereto or any other person against HGI or individual directors and officers of HGI or the Debtors or any claims of HPI against HGI, the Debtors or their affiliates.

- FEI Shale agrees to assign to HPI the proceeds of FEI Shale's direct claims against any party arising under the Farmout Agreement, the ESA and any other related agreement. FEI Shale agrees to pursue such claims in connection with HPI pursuing its own claims and the claims of Trust I at HPI's expense. HPI agrees to fund directly the costs of such litigation including out of pocket expenses and counsel for FEI Shale accruing after Confirmation (the "***Post Confirmation Fees***"). HPI shall have exclusive authority to compromise and/or settle such claims. In the event any counterclaim is brought against FEI Shale and FEI Shale demands that HPI release or dismiss FEI Shale's direct claims, HPI shall either release or dismiss such claims or indemnify FEI Shale from such counterclaim in a mutually satisfactory form with mutually satisfactory financial support. Any recovery by HPI from Trust I from the 90% Pro Rata distribution to HPI relating to claims against Hallwood Group or from HPI's interest in the FEI Shale direct claims after reimbursing HPI for its costs including the Post Confirmation Fees shall be distributed (a) first to pay/reimburse FEI Shale for up to $1,000,000 in (i) legal fees incurred in connection with the Bankruptcy Case between the Petition Date and Confirmation, and (ii) monies FEI Shale has spent paying unpaid liabilities

relating to the Subject Properties in West Texas and (b) second, 80% to HPI and 20% to FEI Shale up to a cap of $2,000,000 payable to FEI Shale under this subpart (b). All other recoveries shall be paid to HPI. FEI Shale agrees to cooperate in the pursuit of such claims including providing witnesses for depositions, hearings and trial.

- Prior to Confirmation, the Debtors will afford FEI Shale full access to the Hallwood Energy Transferred Subject Properties and to all of the Debtors' related files as will permit FEI Shale to complete a due diligence review concerning those properties and the obligations and liabilities associated therewith.

- The Debtors shall assume and assign the Joint Operating Agreements relating to the Hallwood Energy Transferred Subject Properties to FEI Shale or its designee or designees and the assignee shall assume such agreements.

- This agreement is subject to the approval of the Bankruptcy Court and the HPI Secured Lenders. The approval of the HPI Secured Lenders will be a pre-condition to the occurrence of the Effective Date of HPI's Plan.